UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FLOYD MORROW and MARYANN :
MORROW, :
 : HONORABLE JOSEPH E. IRENAS
   Plaintiffs, : CIVIL ACTION NO. 09-4223
 :
  v. : **OPINION**
 :
MARINEMAX, INC., et al., :
 :
   Defendants. :


**APPEARANCES:**

DAVID K. LONG & ASSOCIATES
By:  David K. Long, Esq.
1555 Zion Road, Suite 100
Northfield, New Jersey 08225
   Counsel for Plaintiffs


MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By:  Matthew S. Schorr, Esq.
425 Eagle Rock Avenue, Suite 302
Roseland, New Jersey 07068
   Counsel for Defendants


**IRENAS**, Senior District Judge:

 Plaintiffs Floyd and Maryann Morrow seek damages under the general maritime law against Mr. Morrow's employer MarineMax and other defendants for personal injuries that Mr. Morrow sustained on a boat off the coast of Atlantic City, New Jersey.  Currently before the Court is Defendants' motion for summary judgment.[1]  In

---

[1] Plaintiffs' complaint names multiple defendants.  The instant summary judgment motion pertains to MarineMax, Inc., MarineMax of New Jersey II, MarineMax Northeast, LLC, Eric Haug,

1

it, the MarineMax Defendants contend that Plaintiffs' claims for negligence and loss of services and consortium are barred as a matter of law by the New Jersey Workmen's Compensation Act and its so-called "exclusive remedy provision," N.J. Stat. Ann. § 34:15-8.  For the reasons stated herein, the Defendants' motion for summary judgment will be denied.[2]

**I.**

On August 23, 2006, Plaintiff Floyd Morrow was preparing to watch the annual Atlantic City Air Show aboard a 55-foot motor yacht off the coast of Atlantic City, New Jersey.  Defendant MarineMax, a dealer and distributor of such vessels, had offered Plaintiff,[3] an employee in the company's service department, the opportunity to spend the workday on the yacht as part of an employee appreciation event.  (Def.'s Br. in Supp. of Mot., Statement of Uncontested Facts ¶ 7.)  The parties have stipulated

---

and Steven Larned.  They are the "MarineMax Defendants." Accordingly, the Court's ruling today has no effect on the additional defendant, Ferretti Group SpA, or the *in rem* proceeding involving the 55-Foot Undocumented Ferretti Motor Yacht, her engines, fixtures and tackle.

[2] This Court exercises admiralty jurisdiction over this suit pursuant to 28 U.S.C. 1333 (2006).  The parties are also completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. 1332.  Defendants have not disputed the existence of admiralty jurisdiction.

[3] For convenience, references to "Plaintiff," unless otherwise specified, will refer to Floyd Morrow, rather than his wife, Maryann.

that Plaintiff was acting within the scope of his employment while he was on the yacht. *Id.* at ¶¶ 10-11. Defendant MarineMax held the yacht in its inventory, and was therefore listed as the owner of the vessel. (Compl. First Count ¶ 7.)

Plaintiff's fellow employee had been swimming off the stern of the yacht. Upon his return, he walked through the vessel to find a place to watch the Air Show. As he made his way, he slipped and fell, falling from the yacht's flybridge area into the stern cockpit area. (Pl.'s Br. in Opp. to Def.'s Mot. Ex. A ¶¶ 3-5.) He fell directly onto Plaintiff, who, as a result, fractured his cervical vertebrae, causing paralysis. (Compl. First Count ¶ 13.)

After the accident, Plaintiff filed a claim for workers' compensation benefits with the New Jersey Department of Labor. (Def.'s Br. in Supp. of Mot., Statement of Uncontested Facts ¶ 10.) MarineMax began making payments to Plaintiff pursuant to that claim. *Id.* at ¶ 12. On August 18, 2009, Plaintiff filed suit in this Court. The complaint sounds in admiralty, seeking damages under the general maritime law. Count One contends that Plaintiff was a passenger on a United States vessel who suffered injuries due to the negligence of the vessel's owner, her master and crew, and a fellow passenger. (Compl. First Count ¶ 14.) Count Two states a claim against the boat's manufacturer, Ferretti SpA, for unseaworthiness. Finally, Count Three seeks damages on

behalf of Plaintiff's wife Maryann Morrow for loss of services and consortium.

In their motion for summary judgment, the MarineMax Defendants contend that Counts One and Three of Plaintiffs' complaint must be dismissed because they are barred by the New Jersey Workmen's Compensation Act.  N.J. Stat. Ann. §§ 34:15-1 *et. seq* (2010).  Under this law, if an employee and employer agree to the terms of the Act, the employee may not pursue any other form of relief, such as a common law tort suit, to recover for injuries sustained in the course of employment.  *See id.* at § 34:15-8.  This is otherwise known as the Act's "exclusive remedy provision." *Stephenson v. R.A. Jones & Co., Inc.*, 103 N.J. 194, 196 (1986).  Because Plaintiff filed a workers' compensation claim and has collected payments pursuant to that claim, he appears to fall squarely within this provision.

But because Plaintiffs bring their claims under the federal maritime law, rather than under state law, the Court is presented with a novel legal question in this Circuit: may the exclusive remedy provision of a state's workers' compensation law bar a plaintiff's general maritime tort claim against his employer?  For the reasons described herein, the Court answers this question in the negative and will therefore deny Defendants' motion.  To allow a state's exclusive remedy provision to prevent a plaintiff from bringing a cause of action available under the general maritime

4

law would be to deprive a person of a "substantive admiralty right[]."  This it may not do.  *See Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410 (1953).

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  Because Defendants' motion presents essentially a pure legal question, the parties do not substantially dispute the factual circumstances giving rise to Plaintiff's injury.

## III.

Absent a relevant federal statute, a court exercising admiralty jurisdiction applies the general maritime law, an "amalgum of traditional common law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).  A court

sitting in admiralty should apply the general maritime law in the interest of providing a uniform body of law for resolving claims that arise on the navigable waters of the United States. *Chelentis v. Luckenbach S.S. Co., Inc.*, 247 U.S. 372, 382 (1918) (quoting *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 215 (1917)). Accordingly, there are limits on the extent to which state laws can modify or affect the general maritime law. Specifically, "a state may not deprive a person of any substantive admiralty rights as defined in controlling acts of Congress or by interpretive decisions of [the Supreme] Court. *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410 (1953).

Stated another way, a state's laws may not work "material prejudice to the characteristic features of the general maritime law or interfere[] with the proper harmony and uniformity of that law in its international and interstate relations." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) (quoting *Jensen*, 244 U.S. at 216). This Court's task, therefore, is to consider whether the exclusive remedy provision of New Jersey's Workmen's Compensation Act runs afoul of either of these standards. If so, the state law must yield. Unfortunately, how the Court should apply these guidelines is far from clear.

In the context of a general maritime claim for wrongful death, for example, state laws should provide "an extension of relief," rather than "a contraction of remedies." *Yamaha Motor*

6

*Corp. v. Calhoun*, 516 U.S. 199, 213 (1996) (discussing *Morange v. State Marine Lines, Inc.*, 398 U.S. 375 (1970)).  Because the Supreme Court has held the wrongful death cause of action to be a substantive admiralty right, a state's law cannot preclude or limit recovery for such claims in an admiralty court.  *Matheny v. Tennessee Valley Authority*, 503 F.Supp.2d 917, 923 (M.D. Tenn. 2007) (citing *Yamaha Motor Corp.*, 516 U.S. at 215).  Instead, a court should rely on state laws primarily to "fill gaps" in the general maritime law or provide "additional avenues for recovery." *Id.* (citing federal cases decided in the wake of *Yamaha* demonstrating this proposition).  Thus, in a wrongful death case, a plaintiff may pursue both his state law remedies and his claim in admiralty.

On the other hand, in a case involving an alleged oral agreement between a shipowner and a seaman, the Supreme Court cautioned against a dogmatic application of general maritime law to the exclusion of state law, especially when the circumstances giving rise to the claim bear little reference to traditional maritime activities.  *See Kossick v. United Fruit Co.*, 365 U.S. 731, 739 (1961).  Instead, "the process is surely . . . one of accommodation, . . . somewhat analogous to the normal conflict of laws situation where two sovereignties assert divergent interests in a transaction as to which both have some concern." *Id.*  This language implies that courts should use a balancing test to

resolve conflicts between state and maritime law, and that such balancing might require applying state law to bar rights otherwise available under the general maritime law.  *See id.* ("[R]eview in [the Supreme] Court [can] provide assurance that the federal interest is *correctly assessed* and *accorded due weight*.") (emphasis added).

The Supreme Court itself has acknowledged that it has provided little guidance to lower courts for resolving conflicts between state and maritime law.[4]  *See, e.g.*, *Miller*, 510 U.S. at 447 ("It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernable in our admiralty jurisprudence, or is even entirely consistent within our admiralty jurisprudence").[5]  Accordingly, it

---

[4] It is important to distinguish between claims brought under the general maritime law, which is a body of federal common law, and those brought pursuant to specific Congressional enactments, most notably the Jones Act and the Longshore and Harbor Workers' Compensation Act (LHWCA).  It appears to be a settled proposition of law, under the Constitution's Supremacy Clause, that an employee covered by the Jones Act may bring a negligence claim against his employer, and that an otherwise applicable state workers' compensation exclusivity provision cannot bar such a claim.  *See, e.g.*, *Toland v. Atlantic Gahagan Joint Venture Dredge*, 57 N.J. 205 (1970).  In addition, employees covered by the LHWCA are guaranteed a federal minimum of benefits, even if the applicable state provision provides for a smaller amount. *See Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 724 (1980). The difference in this case is that Plaintiff does not qualify for benefits under either the Jones Act or the LHWCA.

[5] *See also* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* 161 (4th ed. 2004) ("[T]he scope of application of state law in maritime cases is one of the most perplexing issues in the law."); Robert Force, *Choice of Law in Admiralty Cases: "National*

is necessary to review decisions from the Supreme Court and three Circuit Courts of Appeals that have wrestled with the issue presented: a conflict between a general maritime negligence claim and a state's workers' compensation law.

In *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469 (1922), the plaintiff was injured while performing carpentry work aboard a partially constructed vessel in the Willamette River in Portland, Oregon. *Id.* at 474. He sought workers' compensation benefits through the state of Oregon. *Id.* at 474-75. Because the state had, through a "positive enactment," prescribed an "exclusive remedy" for the plaintiff's injury, and because performing carpentry work on an uncompleted vessel had "no direct relation to navigation or commerce," the Court applied Oregon law, barring the employee's general maritime negligence claim. *Id.* at 475-77. The fact that the plaintiff and his employer had not "consciously contracted with each other in contemplation of the general system of maritime law" meant that giving effect to the state workers' compensation law would not work "material prejudice to the general features of maritime law." *Id.* at 476. Instead, the state statute merely "modified" or "supplemented" the general maritime law. *Id.* at 477; *see also Millers' Indem. Underwriters v. Braud*,

---

*Interests" and the Admiralty Clause*, 75 Tul. L. Rev. 1421, 1438 (2001) (stating that the Supreme Court's choice-of-law decisions admit of "no rationale for favoring the application of federal law in some cases and for favoring state law in other cases.").

270 U.S. 59 (1926) (applying the reasoning of *Rohde* to allow the Workmen's Compensation Law of Texas to bar plaintiff's general maritime tort claim).[6]

More recently, the Eleventh Circuit has likewise held that a state's workers' compensation law could bar an injured employee's general maritime negligence claim.  However, the Fifth and Ninth Circuits have reached the opposite conclusion.  The Third Circuit has not addressed the issue.

In *Brockington v. Certified Electric, Inc.*, 903 F.2d 1523 (11th Cir. 1990),[7] the plaintiff was injured off the coast of Georgia while traveling by boat to an island where he was to perform electrical wiring work.  *Id.* at 1525-26.  The court held that the plaintiff was not covered by the Longshore and Harbor Workers' Compensation Act (LHWCA), and that his claim for a

---

[6] The force of *Rohde* and *Millers'* is limited, however, by the Court's subsequent holdings.  *Rohde* was decided before the Court in *Pope & Talbot* expressly held that a state may not deprive a plaintiff of a substantive admiralty right.  *See* 346 U.S. at 410. In addition, *Rohde* is one in a line of cases relying on the so-called "maritime but local" doctrine.  *See Green v. Vermilion Corp.*, 144 F.3d 332, 340 (5th Cir. 1998).  This doctrine applies primarily to cases in which there is no applicable admiralty rule.  1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* 165 (4th ed. 2004).  Because the Supreme Court has recognized an injured employee's right to bring a general maritime negligence claim against his employer, *Chandris, Inc. v. Latsis*, 515 U.S. 347, 356 (1995), the application of this doctrine is inapposite.

[7] *cert. denied*, 498 U.S. 1026 (1991).

general maritime tort was barred by the exclusivity provision of the Georgia Workers' Compensation Act.  *Id.* at 1533  The court noted that federal supremacy in admiralty cases is "adequately served by the availability of a federal forum."  *Id.* at 1529 (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 739 (1961)). Thus, "federal courts sitting in admiralty should, according to the dictates of comity, acknowledge and protect state-created rights, even at times to the exclusion of an existing maritime law."  *Id.* at 1530.  From this premise, the Court relied on a balancing test to resolve the conflict between the state workers' compensation exclusivity provision and the general maritime tort claim.  It weighed "the comparative interests" between the state and maritime law.  *Id.* (citation omitted).  The court was thus presented with a land-based worker who had suffered non-fatal injuries in navigable waters, who was covered by a state workers' compensation statute, who asserted a federal common law cause of action, and who exhibited only a slight connection to navigation and commercial activity.  *See id.* at 1530-33.  Viewed in this light, the court concluded that the state's interest in applying its workers compensation system outweighed a relatively weak federal interest in allowing a person such as the plaintiff to assert a general maritime tort claim against his employer.  *Id.* at 1532-33.  Accordingly, it granted summary judgment for the

defendants.  *Id.* at 1533.[8]

In *Chan v. Society Expeditions*, 39 F.3d 1398 (9th Cir. 1994),[9] the plaintiff, a shore-based employee, was a passenger on a cruise ship that his employer had chartered.  *Id.* at 1402. While ferrying between the ship and a shore destination, his raft capsized, causing him injuries.  *Id.*  He applied for workers compensation benefits from the state of Washington, and then brought a negligence claim against his employer under the general maritime law.  *Id.* at 1402.  The district court dismissed the claim because of the exclusive remedy provision in Washington's workers' compensation law.  *Id.*  The Ninth Circuit reversed, holding that the plaintiff had "a federal maritime right to sue [his employer]."  *Id.* at 1403.  He had "a general claim in admiralty for negligence, and adjudication of that claim is governed by federal common law."  *Id.*  Thus, the Ninth Circuit's

---

[8] Interestingly, the court did declare that, had the plaintiff's claim been for wrongful death rather than for personal injury, then the general maritime law would have prevailed, presumably without the need for any balancing test. *Brockington*, 903 F.2d at 1531.  It is difficult to understand the rationale for drawing such a line, allowing general maritime law to control as a matter of course for claims involving mortal injuries but engaging in an interests balancing analysis for claims involving non-mortal ones.  In the present matter, involving a plaintiff who suffers from permanent paralysis, the Court finds this line to be particularly blurred, thereby rendering *Brockington*'s reasoning less persuasive.

[9] *cert. denied*, 514 U.S. 1004 (1995).

12

analysis[10] suggests that a party injured on navigable waters possesses a substantive maritime right to sue for general negligence and that a state workers' compensation law which abridges that right must give way to the maritime law in an admiralty court.[11]

In the Fifth Circuit, a similar approach to the Ninth's prevails. In *Green v. Vermillion Corp.*, 144 F.3d 332 (5th Cir. 1998),[12] the plaintiff worked at a duck hunting camp as a cook and a watchman. He reached the camp by ferry. *Id.* at 334. He slipped and fell one day while on the ferry, injuring himself. *Id.* He sued under the LHWCA as well as under the general maritime law for negligence. *Id.* While he did not seek state workers' compensation benefits, the parties agreed that he fell squarely within the purview of that system, including its exclusive remedy provision. *Id.* at 335, n.1. The district court found that the plaintiff was not covered by the LHWCA, and that the workers'

---

[10] Although *Brockington* had been decided nearly four years earlier, the Ninth Circuit did not cite the case at all, despite the fact that the two cases presented the identical legal question.

[11] It should be noted that Washington's law expressly exempted from the workers compensation scheme "employers and workers for whom a right or obligation exists under the maritime laws." *Id.* at 1402-03. The Court concluded that the plaintiff was covered by this provision. *Id.* at 1403. It is not clear to what extent that circumstance played a role in the Court's holding.

[12] *cert. denied*, 526 U.S. 1017 (1999).

compensation system barred the claim for general maritime negligence against the plaintiff's employer. *Id.* at 333-34. The Fifth Circuit reversed the latter holding, ruling that the workers' compensation system could not bar the general maritime negligence claim. *Id.* at 341-42. The Court concluded that maintaining uniformity in maritime law was the key factor in the analysis. *Id.* at 341. Given that an "action for negligence has long been a vestige of general maritime law, subjecting it to the ebbs and flows of state legislation would disrupt the essential features of admiralty law." *Id.* For this reason, the plaintiff was able to pursue his negligence claim, despite the exclusive remedy provision of Louisiana's state workers' compensation law.[13]

Two recent district court decisions have followed the Fifth Circuit approach, allowing the plaintiff to bring his general maritime negligence claim despite an otherwise applicable workers' compensation exclusivity provision; neither relies on an interests balancing test. *See Frazier v. Carnival Corp.*, 492 F. Supp. 2d

_____

[13] The Ninth Circuit's discussion of *Brockington* was a cursory one: "[T]he court in *Brockington* only unearthed the line of Supreme Court cases giving preclusive effect to state workers' compensation statutes since it failed to cite any of the cases recognizing the superiority of general maritime tort claims over state remedies. [citation omitted]. Since our holding today relies heavily on this more venerable line of Supreme Court precedent which the Eleventh Circuit did not treat, we think the split with our sister circuit which we create today will be short-lived." *Id.* at 339, n.3. Twelve years on, that split abides.

571 (E.D. La. 2007) (bound by Fifth Circuit precedent to apply the approach in *Green*); *Moore v. Capitol Finishes, Inc.*, No. 2:09cv392, 2010 WL 1190822 (E.D. Va. Mar. 9, 2010) (acknowledging that the issue was a novel one in the Fourth Circuit, surveying the Fifth Circuit and Eleventh Circuit approaches, adopting the former).

On the other hand, the Virginia Supreme Court has embraced the Eleventh Circuit's balancing test. *Mizenko v. Electric Motor & Contracting Co., Inc.*, 244 Va. 152, 164 (1992). It produced a sharply divided opinion in which a bare majority concluded that the federal interest in allowing the plaintiff, a subcontractor working on a Navy destroyer, to bring a general maritime negligence claim against his private employer outweighed the state's interest in enforcing the exclusive remedy provision of its workers' compensation system. *Id.* Finally, a Washington Appeals Court, citing Fifth Circuit precedent, and without applying any balancing test, determined that a plaintiff injured on a ferry ride could bring a claim for general maritime negligence despite the applicability of Washington's workers' compensation law. *Maziar v. State Dept. of Corrections*, 216 P.3d 430, 435 (Wash. Ct. App. 2009).

From this survey, the following is clear. When a conflict exists between state law and the general maritime law, two analyses are possible. A court can look to see whether the

15

plaintiff's cause of action exists under the general maritime law. If the Supreme Court has provided for this cause of action, and the otherwise applicable state law would bar such a claim, then the state law must yield.  *See Pope & Talbot*, 346 U.S. at 410.  On the other hand, a court can resort to a traditional balancing test, weighing the equities between state and federal interests on a case-by-case basis.  *See Kossick*, 365 U.S. at 739; *Brockington*, 903 F.2d at 1530-33.  This Court concludes that the first approach, as adopted by the Fifth Circuit and other courts, is most faithful to Supreme Court precedent, and must control in the instant matter.  "That uniformity is not to be sacrificed to accommodate state law is a fundamental premise of admiralty jurisdiction."  *Green*, 144 F.3d at 341 (citation omitted).  When this Court sits in admiralty, it may not allow a state's statute to deny a plaintiff the opportunity to pursue a cause of action expressly provided for in the general maritime law.

Under the Fifth Circuit approach, a court still maintains discretion to apply state law in certain cases.  Such discretion is inherent when determining whether admiralty jurisdiction exists.  Specifically, in suits involving injuries sustained on the navigable waters of the United States that have little or no connection to traditional maritime activities, a court may rule that state law applies if it finds that the facts do not support admiralty jurisdiction.

16

Under the old rule for determining admiralty jurisdiction for tort claims, if the events giving rise to the action occurred on navigable waters, such circumstance was sufficient to give rise to admiralty jurisdiction. *See, e.g.*, *Rohde*, 257 U.S. at 476 ("The general doctrine that admiralty jurisdiction depends . . . in tort matters upon the locality, has been so frequently asserted by this Court that it must now be treated as settled."). The modern analysis, however, is not so simple. In addition to meeting this locality requirement, admiralty jurisdiction for tort claims also requires that the incident have "a potentially disruptive impact on maritime commerce," and that "the general character of the activity giving rise to the incident show[] a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). This "maritime nexus" test thus involves weighing the federal interest in applying maritime law to the particular claim. *See* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* 106 (4th ed. 2004).

Seen in this light, then, the Fifth and Eleventh Circuit approaches might not be as discordant as they originally appeared. They might also not yield substantially different results in practice. The Eleventh Circuit's decision in *Brockington* seemed motivated, at least in part, by the court's desire to apply state law to a case that exhibited little connection to traditional

maritime activity.  This same motivation can guide the
jurisdictional analysis required under the Fifth Circuit approach.
*See id.* at 108 (concluding that the modern test for admiralty
jurisdiction operates "as a policy-based filter that allows the
courts flexibility in screening out unusual fact situations that
are not maritime in nature, but happen to occur in navigable
waters.").  The difference seems merely to be one of analytical
efficiency.  Under the Fifth Circuit analysis, a court assesses
the strength of federal maritime interests to determine whether
admiralty jurisdiction exists.  If admiralty is proper, then
federal law prevails.  If not, then state law will apply.  The
Eleventh Circuit approach requires the same threshold
jurisdictional analysis.  But, assuming admiralty jurisdiction
exists, a second balancing test, involving largely the same
criteria, follows shortly thereafter.  The Court sees no reason to
engage in this additional, seemingly redundant analysis.

Turning to the present matter, Plaintiff was injured in the
course of employment, but he is not covered either by the Jones
Act or the LHWCA.  "Injured workers who fall under neither
category may still recover under an applicable state workers'
compensation scheme, or, in admiralty, under general maritime tort
principles."  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 356 (1995).
Plaintiff's claim is therefore a clearly defined cause of action

18

in the general maritime law.[14]

The New Jersey Workmen's Compensation Act, if applied, would bar Plaintiff from bringing this claim. Thus, it appears that the state law would "deprive" Plaintiff of a "substantive admiralty right[] as defined . . . by interpretive decisions of [the Supreme] Court." *Pope & Talbot*, 346 U.S. at 410; *see also Moore v. Capitol Finishes, Inc.*, 2010 WL 1190822 at *9) (concluding that to allow a state workers' compensation law to preclude a plaintiff's maritime tort claim would be "the quintessence of deprivation").[15] Accordingly, Plaintiff's general maritime negligence claim must be preserved, despite the exclusivity provision of the New Jersey Workmen's Compensation Act.[16]

---

[14] With regard to Plaintiff Maryann's claim for loss of services and consortium, the Supreme Court has likewise recognized such cause of action to exist under the general maritime law. *See American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 285 (1980). So the analysis is substantially the same. Her claim will survive summary judgment as well.

[15] Despite defense counsel's assertions to the contrary, the activities giving rise to the Plaintiff's claim are traditional maritime activities. Plaintiff, a passenger on a vessel, was injured on that vessel while in navigable waters. In adjudicating the negligence claim, issues of the vessel's operation, maintenance, or seaworthiness are likely to arise.

[16] Of course, the fact that Plaintiff has already received workers' compensation benefits should not materially affect the analysis. Should Plaintiff prevail on his federal common law claim, the amount of his received workers' compensation payments will be credited against the final award. *See Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 946 (3d Cir. 1990). In addition, assuming that MarineMax relies on one insurer to pay workers' compensation benefits, and another insurer to pay damages in a negligence suit, the Court expresses no opinion

Defendants, in support of their motion, assert that to let Plaintiff's claim stand would be to render legislation such as the Jones Act and LHWCA "ineffectual and pointless." (Def.'s Response to Pl.'s Br. in Opp. 3.)  The Court disagrees.  The Supreme Court has acknowledged that a general maritime tort claim is "admittedly less generous than the Jones Act's protections." *Chandris*, 515 U.S. at 356.  In addition, the LHWCA sets a federal minimum for workers' compensation benefits.  Were New Jersey workers' compensation benefits paid at a lower rate than those provided for in the LHWCA, a worker covered by the federal act would be entitled to the higher payments, while Plaintiff would have to accept the inferior state compensation schedule.  In addition, Plaintiff's claim for negligence is a completely different basis for recovery than the LHWCA's no-fault compensation scheme.  *See Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 951 (3d Cir. 1990) (citations omitted).  So the analyses for declaring a particular person covered by either the Jones Act or the LHWCA remain critical in the realm of recovery for injuries to workers on the navigable waters of the United States.  In sum, New Jersey's Workmen's Compensation Act cannot preclude Plaintiff's claim for general maritime negligence.

---

about the extent to which one insurer should reimburse the other to satisfy any award Plaintiffs might receive under their federal common law claims.

**IV**.

For the reasons stated above, the Court holds that under the general maritime law, Plaintiff may bring a claim for negligence under the general maritime law against Defendants, and that such claim may not be barred by New Jersey's Workmen's Compensation Act.  Defendants' motion will therefore be denied.  The Court will issue an appropriate Order.

Dated: August 17, 2010

                                        s/ Joseph E. Irenas
                                        Joseph E. Irenas, S.U.S.D.J.